Thomas Bodnar
CO# 2492-7
PO Box 5003
Coalinga, CA 93210

In Pro Per:

# United States District Court
# Eastern District of California

| | |
|---|---|
| Thomas Bodnar ) | Case No.:   2:22-cv-01533 -AC |
| Plaintiff ) | |
| ) | First Amended Civil Rights Complaint |
| Vs. ) | 42 U.S.C. §1983 |
| ) | (Non-Prisoner) |
| Stephanie Clendenin, ) | |
| Director of The Department ) | Demand For Trial |
| of State Hospitals and ) | |
| Brandon Price, Executive ) | |
| Director of Department of ) | |
| State Hospitals-Coalinga ) | |
| Defendants ) | |
| ) | |

## I. Exhaustion:

The enactment of the PLRA in 1996 imposed two filing requirements: Filing fees, 28 U.S.C §1915 and exhaustion of administrative remedies, 42 U.S.C § 1997(e). Both state for "prisoners", that the definition of "prisoner" for the purposes of these provisions of the PLRA is explicit. As used in 28 U.S.C §1915, the term "prisoner" mean any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program. In 42 U.S.C § 1997(e) identical language is used. The Sexually Violent Predation Act ("SVPA") provides not for criminal sanctions (Cal Welf. & Inst. Code §6600), but for the civil commitment of an individual. The Ninth Circuit in Page v Torrey 201 F.3d 1136; holds these two PLRA requirements do not apply to civil commitment or detainees.

## II. Premise

This complaint alleges that the defendants, in their individual capacities, while acting under the color of state law, have created and maintain conditions of confinement to which the Plaintiff is subjected to and that these conditions of confinement are in violation of statutory and decisional laws found. See California Code of Regulations (CCR) Title 9, §§880-884: United States Supreme Court in Bell v Wolfish, 441 US 520, 537-539 and Young v Romero, 457 US 307, 32-322; the Ninth Circuit Court in two cases. Jones v Blanas, 393 F.3d 918 (2004) and King v County of Los Angeles (9th. Cir. 2018) 885 F.3d 548. By and though these violations of statutory and decisional laws defendants have, and continue to, violated Plaintiff's Due Process rights under the Fourteenth Amendment of the U.S. Constitution.

## III. Parties

1) Plaintiff, Thomas Bodnar who resides at 24522 W. Jayne Ave., Coalinga  California 93210 alleges that his civil rights were violated by the action(s) of the below named individuals. The actions were directed towards this plaintiff while confined at Coalinga

State Hospital as a pre-commitment civil detainee under California Welfare and Institution Code (WIC) §§6600-6604 from July 2018 to present.

**Defendants**

2) Defendant One, Stephanie Clendenin, while working for the California Department of State Hospitals (DSH) at 1600 9th street, Sacramento, California 98814, with the title of Director of the Department of State Hospitals, in her individual capacity, having duties that consist of, but not limited to: establish a list of property or items civil patients are not allowed to have (WIC §7295 (b)); have the Director of each hospital (in the case Brandon Price, Defendant Two) establish a list of disallowed property (WIC §7295 (c))/ review and give final approval disallowing property and maintain conditions for civil patients so they do not become punitive in nature. For condition not to become punitive in nature requires that the Defendant make sure that any denial of an item is in accordance with CCR, Title 9, §§880-884 and that the objective of any denial be not based on an element of punishment such as deterrence of something already a crime or retribution because of the acts of others. Also, such a denial cannot be based on wholly speculative perditions of safety and security problems. Defendant must insure Plaintiff's conditions are less restrictive as a civil detainee than a prisoner receives.

3) Defendant Two, Brandon Price, working for the California Department of State Hospitals as Executive Director of Coalinga State Hospital, residing at 24511 W. Jayne Ave., Coalinga California 93210 in his individual capacity, having duties that consist of, but not limited to: establish a list of property or items civil patients are not allowed to have (WIC §7295 (c)); submit the list to the Director of State Hospitals (in the case Stephanie Clendenin, Defendant One) for final approval disallowing property and maintain conditions for civil patients so they do not become punitive in nature. For condition not to become punitive in nature requires that the Defendant make sure that any denial of an item is in accordance with CCR, Title 9, §§880-884 and that the objective of any denial be not based on an element of punishment such as deterrence of something already a crime or retribution because of the acts of others. Also, such a denial cannot be based on wholly speculative perditions of safety and security problems. Defendant must insure Plaintiff's conditions are less restrictive as a civil detainee than a prisoner receives.

## IV. Supporting Facts:

4) Prisoners in California Department of Corrections and Rehabilitation (CDCR) are given by CDCR, internet capable devices and internet access. This program allows prisoners a better quality of life, a greater chance to successfully reintegrate back into society upon release, with a higher probability or rehabilitation. Defendants have not adopted the above program or anything like it for the Plaintiff.

5) Patients under the same civil process as this Plaintiff (WIC) that are out on conditional release, have individualized conditions that allow the Patient to have internet capable devices and internet access (e.g. computers, smart phones and gaming devices). Defendants have denied Plaintiff the same individualized conditions to this Plaintiff who is under the same law.

6) Parolees still under the constructive custody of CDCR, have individualized conditions of parole that allow them electronic devices (e.g. computers, recordable disks, memory devices, smart phones, gaming devices, internet access and more). Defendants have denied this Plaintiff the same individualized conditions.

7) CDCR prisoners are allowed to purchase and wear personal clothing. Defendants have denied Plaintiff to own and wear the same selective type of personal clothing prisoners are allowed despite WIC §5325 (a).

8) CDCR offers prisoners industry standard Vocational Education and Academic Education classes which provide marketable skills for the prisoners upon release. Defendants do not offer similar training and education opportunities or marketable skills to help Plaintiff succeed in society upon release. In fact, Defendants over the years have cut the few programs they did have. Defendant further gives far less money to a patient when they leave the hospital back into society than prisoners get. CDCR through parole offices give parolees funds as need to help with housing and other expenses to make it. Defendants do not offer anything to help a patient released back into society to succeed.

9) Coalinga State Hospital (CSH) used to allow nutritional supplements for patients. The approval was individually based through the Patient's Treatment Team, which includes medical personal. CSH has disallowed all supplements and made it a blanket denial instead of being based on the individual and going through the Treatment Team of the Patient.

10) From July 2018 to the present, Plaintiff has experienced a growing list of disallowed property/items based on defendant's speculative assertion of a need to deter acts that are already criminal in nature and/or "safety and security" issues. Defendants continually employ the term "safety and security" outside the authorized definition of the terms per CCR Title 9, §880. The causation for this redaction of allowable property/items has not been individualized to the Plaintiff.

11) CSH package program over the last several years has become more restrictive and is now similar to the package program implemented by CDCR for prisoners.

12) The CSH patient phone system in the Plaintiff's housing unit does not give this Plaintiff reasonable access to make or receive confidential phone calls when needed.

13) Defendants for the whole time the Plaintiff has been at CSH or solely looking at the last four years, have failed to provide this Plaintiff with adequate treatment to address his alleged mental disorder, that which allegedly makes him a risk to the public. Plaintiff thus has not been given a reasonable expectation to regain his freedom. Plaintiff's confinement has gone for a priority of forensic treatment, to a non-forensic facility of just confinement. The inadequate treatment is a constitutional issue and a statutory issue. Defendants have closed ancillary groups that have been recommended to treat each of the Plaintiff Dynamic Risk Factors. Defendants rotate facilitators from group to group regularly causing disruption in treatment. Defendants allow facilitators to end a group early or close the group for the day so the facilitators can attend or do administrative duties. Making treatment a non-priority. Defendants on paper state adequate treatment is provided, but as to what is supposed to be provided according to Defendants and what is actually happening in the groups is two different things. Furthermore, the is a disconnect between what the Department of State Hospitals evaluators think the treatment is like an offered at CSH and what is actually offered or continually changing. This does not give the Plaintiff a fair evaluation

when the evaluators come to CSH and update Plaintiff's evaluations. At CSH there is a shortage of facilitators, groups and hours of treatment have diminished.

14) Defendants treatment program that has be provided for the Plaintiff since he has been here or at least in the last four years is far below recommendations found in "Sex Offender Civil Commitment Program Network" (SOCCPN). SOCCPN gathers information from sex offender civil commitment programs in 19 different states, including staff qualifications and ratios, phase description, hours of treatment, etc., and determines generally accepted practices by calculation an acceptable range based on the information gathered. Information used by Federal courts as a guidelines as to effective treatment standards. (See. Howe v Godinez, et all., US District Court, S.D. Illinois, Case No. 13-cv-844-SMY, Sept. 2021). Defendants' treatment program fails as to the ratio of facilitators, hours of treatment per week and other categories.

15) Plaintiff being in treatment group(s) when held or offered has been and is restricting his ability to obtain his personal liberty by the way groups are actually held and operated. As there is no constant structure in the treatment. Most facilitators do their own thing and the constant rotation of facilitators adds to the problem.

16) Defendants over the last four years have not stated, no is there any information, that the treatment program follows some standardized protocol that is accepted like the guidelines in SOCCPN. This is why the treatment program at CSH changes all the time. Every administrator, supervisor, and facilitator has their own ideas and run things their way with no oversight.

17) The structure of the groups Plaintiff is in has not let the Plaintiff in the past and present, present his assignments every week or every month. Plaintiff's personal treatment is and has been stalled and not moving forward at a reasonable speed. Groups are getting more restrictive.

18) The group sessions Plaintiff is in or has been in, have consistently been canceled with a ratio that is unreasonable. These groups also, in a consistent manner, cancel sessions early or start late in a manner that is also unreasonable.

19) Plaintiff's SOTP Module II group in the last three years has change psychologist in the group five times. This cause set backs in the Plaintiff moving forward in a consistent and reasonable manner.

20) When a new SOTP Module II facilitator takes over the group. Notes from the previous facilitator are lacking the specific progress made of the Plaintiff in the group. This does not give the new facilitator the facts needed for the new facilitator to continue with the Plaintiff's treatment at the same pace, but causes the Plaintiff to redo some of his work. Also, there maybe no notes at all from the previous facilitator to the new facilitator to support Plaintiff's progress. This to causes the Plaintiff to redo his work. As new facilitators have said to the Plaintiff, I do not know anything about you. So, I'm not willing to put you up for the requested assessment needed to mover forward.

21) Currently CSH's SOTP treatment program uses the book "Building a Better Life" by Pamela M. Yates Ph.D. and David S. Prescott, LICSW. The course id designed to be an eighteenth month program. However, to get through it at CSH it takes over five years or more.

22) When the Plaintiff was in state prison, he talked to a couple of inmates in a sex offender treatment pilot program. They were in a group of 8, that met Monday through Friday for one and a half hours and then they had two to three hours of home work each day. They presented every day unlike at in the Plaintiff's past and current SOTP Module II group which only allowed him to present every month and a half or so. Each inmate also met with the facilitator once a week for an hour on a one-on-one session.

23) Plaintiff has recently been put up for TNPA (Treatment Needs Progress Assessment) by his Module II facilitators. The assessment center assigned a psychologist to do the TNPA. This psychologist requested three assignments be turned into to them. Plaintiff had the assignment done and on the hospital's thumb drive assigned to the Plaintiff. Problems with the thumb drive have caused data to be lost or not assessable. These three assignments have been deleted or no longer on the Plaintiff's assigned thumb drive. Plaintiff has told his facilitators this, who in turn let the assessment center know. The assessment center stated Plaintiff then has to redo the assignments. Plaintiff's facilitator and unit psychologist at the time Brenda Elliott stated they do

not need the assignment to do the TNPA. The TNPA is an assessment of Plaintiff's Dynamic Risk Factors and how the Plaintiff has done in treatment. This is a few hour session of questions and answers. This has stalled Plaintiff's progress, again by having to do assignments over. Even though the TNPA can still move forward, the assessment center is firm and will not work with the situation, even though several psychologists stated Plaintiff can still do the TNPA.

24) Plaintiff has a Treatment Team. This Team is supposed to consist of at least the unit psychologist, social worker, rehabilitation therapist, medical personnel and case manager. The Team is to provide a Treatment Plain for the Plaintiff. The Plan is to show what the Plaintiff is suppose to do to address each dynamic risk factor deemed of some type of concern, show what groups are completed.

25) The Treatment Plan also addresses these eleven Focus areas: (1) Psychiatric and Psychology; (2) Social Skills; (3) Dangerousness and Impulsivity; (4) unknown to Plaintiff; (5) Substance Abuse; (6) Medical; (7) Legal; (8) School and Education; (9) Spiritual; (10) Leisure and Recreation; and (11) Community Integration.

26) Plaintiff is supposed to have a monthly team conference, but they are only done quarterly. Plaintiff has not had a full team, meaning all team members present in about three years. One or more of the team members is usually missing and no supervisor fills in.

27) Plaintiff has not had a Psychologist on the unit for about two years now. This means no psychologist does updates for Focus areas one and three in Plaintiff's Treatment Plan. So no updates have been done in a couple of years to these two Focus areas.

28) The Team members in charge of these Focus areas do not meet with the Plaintiff before the team conference to update the Focus area for that period.

29) Plaintiff's Treatment Plain is not accurate and when he has brought it up, he is told that is it ok. The Treatment Plan being so inaccurate and not up to date does not give the Plaintiff accurate prognosis in his treatment. Plaintiff's Treatment Plan gets review by the state evaluators to

determine Plaintiff progress. This causes the evaluators to form an opinion that is not favorable to the Plaintiff or gives an accurate prognosis of his treatment and behavior of good behavior.

30) The state evaluators usually come and update their evaluation about every year, as they go stale after a year. Plaintiff has asked the evaluators if they know what kind of groups are being held, how often etc. The evaluators state they have no clue. This means there is no communication between SCH and the state evaluators or DSH, SVP unit. The two are not in the same page on the treatment that is actually happing and constantly changing at CSH. This causes the evaluators opinion to not be favorable for the Plaintiff.

31) Plaintiff is a Christian and attends Protestant services. The Hospital offered Protestant services every Sunday. Plaintiff attended regularly from 2018 to March 2020. In March 2020, the Hospital suspended Protestant services. To date, the Hospital has not provided any type of Protestant services. Plaintiff thus, has not been able to attend and practice his religion through church services.

## V. Causes of Actions

**Cause One:**

32) Plaintiff re-alleges the allegation contained in paragraphs 4-12, inclusive to this complaint.

33) As a direct result in Defendant, Stephanie Clendenin Director acting under the color of the authority the state has granted her as the Director of DSH. Clendenin is tortuously liable in her individual capacity in that she has created and maintained Plaintiffs conditions of confinement such that they are punitive in nature as to each of the paragraphs herein. Furthermore, each paragraph shows where Clendenin failed to adhere to the mandates of CCR Title 9, §§880-884 in that her actions reflect a blanket application to all patients without any individualized consideration to the Plaintiff. Clendenin has failed to follow state and federal statutory and decisional laws as each paragraph illustrates the punitive nature of her action where Clendenin's objective was/is to deter conduct already addressed by Penal Code statutes or in retribution based on action of other patients. Each restriction is supported by a speculative need for "safety and security" where this term is used loosely and not in accordance with CCR Title 9, §§880-884, but

instead is used as CDCR does for its prisoners (prisoners can be subjected to conditions amounting to punishment). Clendenin has failed to insure Plaintiff conditions of confinement are less restrictive than prisoners and failed to take less restrictive options. All statutory and decisional laws cited herein are well established and it is reasonable to expect that Clendenin is/was aware that they exist and that she is/was not in compliance. The foregoing is the moving force of violations of Plaintiffs Due Process right protected under the Fourteenth Amendment of the U. S. Constitution.

**Cause Two:**

34) Plaintiff re-alleges the allegation contained in paragraphs 4-12, inclusive to this complaint.

35) As a direct result, Defendant, Brandon Price, Executive Director of Coalinga State Hospital acting under the color of the authority the state has granted him as Executive Director of Coalinga State Hospital. Price is tortuously liable in his individual capacity in that he has created and maintained Plaintiffs conditions of confinement such that they are punitive in nature as to each of the paragraphs herein. Furthermore, each paragraph shows where Price failed to adhere to the mandates of CCR Title 9, §§880-884 in that his actions reflect a blanket application to all patients without any individualized consideration to the Plaintiff. Price has failed to follow state and federal statutory and decisional laws as each paragraph illustrates the punitive nature of his actions where Price's objective was/is to deter conduct already addressed by Penal Code statutes or in retribution based on action of other patients. Each restriction is supported by a speculative need for "safety and security" where this term is used loosely and not in accordance with CCR Title 9, §§880-884, but instead is used as CDCR does for its prisoners (prisoners can be subjected to conditions amounting to punishment). Price has failed to insure Plaintiff conditions of confinement are less restrictive than prisoners and failed to take less restrictive options. All statutory and decisional laws cited herein are well established and it is reasonable to expect that Price is/was aware that they exist and that he is/was not in compliance. The foregoing is the moving force of violations of Plaintiffs Due Process right protected under the Fourteenth Amendment of the U. S. Constitution.

**Cause Three:**

36) Plaintiff re-alleges the allegation contained in paragraphs 13-30, inclusive to this complaint.

37) As a direct result in Defendant, Stephanie Clendenin Director acting under the color of the authority the state has granted her as the Director of DSH. Clendenin is tortuously liable in her individual capacity in that she has created a treatment program that is inadequate, and that does not give this Plaintiff a reasonable expectation to obtain his liberty. (See Cal. Welfare & Inst. Codes §5325.1(a) and §7503) This makes Plaintiff's confinement punitive in nature and violates his Due Process rights under the Fourteenth Amendment of the United States Constitution.

**Cause Four:**

38) Plaintiff re-alleges the allegation contained in paragraphs 13-30, inclusive to this complaint.

39) As a direct result, Defendant, Brandon Price, Executive Director of Coalinga State Hospital acting under the color of the authority the state has granted him as Executive Director of Coalinga State Hospital. Price is tortuously liable in his individual capacity in that he has created a treatment program that is inadequate, and that does not give this Plaintiff a reasonable expectation to obtain his liberty. (See Cal. Welfare & Inst. Codes §5325.1(a) and §7503) This makes Plaintiff's confinement punitive in nature and violates his Due Process rights under the Fourteenth Amendment of the United States Constitution.

**Cause Five:**

40) Plaintiff re-alleges the allegation contained in paragraph 31, inclusive to this complaint.

41) As a direct result, Defendant, Brandon Price, Executive Director of Coalinga State Hospital acting under the color of the authority the state has granted him as Executive Director of Coalinga State Hospital. Price is tortuously liable in his individual capacity in that he has suspended all Protestant Church services and has not adopted any type of service in the least restrictive way. This is the moving force in violation Plaintiffs First Amendment right under the Federal Constitution to practice his religion.

## VI. Request For Relief

42) I the Plaintiff believe and request I am entitled to the following specific reliefs:

   (1) Award damages as to Cause of Action One in the amount of $250,000
   (2) Award damages as to Cause of Action Two in the amount of $250,000
   (3) Award damages as to Cause of Action Three in the amount of $250,000
   (4) Award damages as to Cause of Action Four in the amount of $250,000
   (5) Award damages as to Cause of Action Five in the amount of $250,000

   (6) Allow amendment as the court deems fit.
   (7) Allow appointment of counsel when the court deems fit.
   (8) Award any other damages the court deems fit or appropriate.
   (9) Order any other injunctions the court deems appropriate to protect both state and federal constitutional rights.

Date: 9-15-22

*[Signature]*

Plaintiff in Pro Per

## VII. Request For Injunction Relief

43) In paragraphs 4-14 of this complaint, each paragraph shows a specific and factual condition, well established that each condition is punitive in nature. Each cause of action clearly states each Defendant failed in their individual capacities relating to each condition from these paragraphs.

44) Defendants as to each of these conditions failed to follow statutory and decisional laws. Specifically, failed to follow statutory and decisional laws where they knew, or reasonably should have known, these laws existed. Specifically, the disallowance of property not in accordance with the mandates set forth in CCR Title 9 §§880-884 that require such denials be individually based.

45) Conditions complained of as to each paragraph, were imposed based on objectives relevant to punishment (i.e. deterrence and retribution) and/or wholly on speculative predictions of "safety and security" concerns.

46) Wherefore Plaintiff respectfully requests this court order Defendants to redress each punitive condition within each paragraph herein, further that this court order the defendant to base any future denials of property in accordance with CCR Title 9 §§880-884 and to refrain form using objectives founded in punishment and speculative assertions to "safety and security" issues.

47) Plaintiff further requests this court order the defendants review each property item which is currently and/or has been denied to date. Then if such denial is fund to have been implemented in violation of CCR Title 9 §§880-884 or is based on the elements of punishment or wholly speculative assertions of safety and security, that denial be vacated and the property be allowed.

48) Plaintiff also requests the court to order Defendants to provide Protestant Church services.

## VIII. Demand For Trail By Judge

Plaintiff hereby requests a trial by judges due to the potential inflammatory and prejudicial facts that may arise in trial. So much that it would hard to get an impartial jury.

Date: 9-15-22

Plaintiff in Pro Per

## IX. Verification

I swear under the penalty of perjury under the laws of the United States and the State of California, that the foregoing is true and correct to the best of my knowledge.

Executed on September 15, 2022.

Date: September 15, 2022

Plaintiff, In Pro Per